ALLEN S. HOSKING, PLAINTIFF-APPPELLEE, v. FRED-ERICK ISAACSON AND WEST ORANGE HAY AND GRAIN COMPANY, INCORPORATED, A CORPORATION, DEFENDANTS-APPELLANTS.

Submitted March 22, 1923—Decided June 5, 1923.

Negligence—Runaway Horses—Injury to Automobile—Evidence Relating to Negativing of Negligence.

On defendants' appeal from the District Court.

Before Justices PARKER, BERGEN and MINTURN.

For the appellants, *Collins & Corbin.*

For the appelle, *William A. Lord.*

PER CURIAM.

Plaintiff sued for damage done to his automobile by a runaway horse belonging to defendant West Orange Hay and Grain Co., and under charge of defendant Isaacson, who was its president. The horse was drawing a wagon, which collided with plaintiff's car, inflicting the damage in question. Plaintiff offered testimony to prove the circumstances of the accident, the ownership, the control by defendant Isaacson, and the amount of damage, and rested. The court denied a motion to nonsuit. On the defendants' case it appeared that Isaacson had bought the horse a few hours previously for $75 after a trial which he said took half an hour, but

which his assistant Gabriel testified consisted of driving him about a block and back again; that Isaacson could not remember the name or number of the place where he had bought the horse nor the name of the person or corporation from whom he had bought him; that he had a boy drive another horse and the wagon down from West Orange to the place where the purchase took place, and there the new horse was hooked up to the wagon and the other horse went home under saddle. Isaacson and Gabriel then started from this place (in First street, Newark), for West Orange via Central avenue. By this time it was after dark. Instead of going south on First street to Central avenue, they went north and came out into Orange street, and apparently thinking themselves on Central avenue, turned to the right and did not discover the error until Isaacson found himself somewhere on Broad street, Newark, near the public library. At this juncture, one of the hind shoes showed signs of being loose, and Isaacson stopped the horse. Gabriel by his orders got out with a lighted lantern and attempted to examine the hind feet, when the horse, according to Isaacson, started to walk, then to run, swung around a corner, threw Isaacson out (there was testimony that he said he had jumped) and sped away, evidently down Bridge street and across the bridge into Harrison avenue, Harrison, where the collision occurred.

The court refused to direct a verdict for the defendants, and gave certain instructions to the jury which are claimed to be erroneous. Error is also assigned on the refusal to nonsuit and to direct, and with respect to certain rulings on evidence.

There was no error in refusing to nonsuit, for as the court said to the jury, obviously on the authority of *Kokoll* v. *Lumber Co.*, 77 *N. J. L.* 169; *Francois* v. *Hanff, Id.* 364; *Dennery* v. *Great A. & P. Tea Co.*, 82 *Id.* 517, "the unexplained presence upon a public highway of a runaway horse harnessed to a wagon, unattended by the owner or other person, raises a *prima facie* presumption of negligence on the part of the owner." Obviously the plaintiff's case was within that rule, and a nonsuit would have been erroneous.

It is urged, however, with respect to the refusal to direct, that the evidence for defendant fully rebutted that presumption by exhibiting a situation in which negligence was negatived as a court question. There are cases in which it has been so held. In *Unger* v. *Forty-Second Street Railroad Co.,* 51 *N. Y.* 497, the runaway street car horses were accounted for by the outside interposition of two drunken men, one of whom struck one of the horses, and the other snatched the reins away from the driver. So, in *McCormack* v. *Standard Oil Co.,* 60 *N. J. L.* 243, the excavation in the street which on plaintiff's case was inferably chargeable to the defendant, was incontestably shown to have been made by other parties. But in the case at bar no such situation was intimated. Confessedly, Isaacson had bought a $75 horse after a very short trial, not knowing, so far as appears, whether he was used to city sights and noises, and undertook to drive this strange horse several miles to West Orange, and when the shoe made trouble, had his assistant start an examination in a busy street with a lighted lantern around the horse's heels. It is suggested that the horse could not see the light, but the case is silent as to whether the bridle had blinders on it. Add to this that Isaacson's testimony as to the place where, and the persons from whom, he bought the horse was so indefinite as to arouse the suspicion of the judge himself, and the further circumstances that two men starting for West Orange via Central avenue succeeded in getting into Orange street and driving over a mile into the centre of Newark before discovering where they were, and we have an explanation of the occurrence which the jury might well discredit in the first place, and might well conclude was not explanatory, but rather incriminatory in the second. As was said in the *Dennery case, supra* (at p. 520), "We do not think it presented such a clear negation of negligence on the part of the driver as to justify the court in directing a verdict for the defendant."

This result necessarily disposes of the point that the judge erred in charging the rule laid down in the cases cited. The instruction is challenged on the ground that the ex-

planation was adequate; but we have just said that it was for the jury to say whether it was or not.

It is again urged for error that the court charged it was not necessary to show that the horse was of a vicious disposition. The general correctness of the proposition is not attacked (see *Francois* v. *Hanff, supra,* and the discussion in the Dennery case), but it is said that it was irrelevant and therefore harmful. We fail to see that it was irrelevant. Isaacson and Gabriel had both testified that they had examined the horse and found him gentle and kind, and we do not know but that counsel in summing up to the jury had expatiated on this very point. It may be noted that counsel excepted to this part of the charge on the ground that "it [knowledge of a vicious disposition] must be proved."

Lastly, the overruling of certain objections to questions asked of Isaacson on cross-examination. Of these questions, all but one were not answered at all, so the rulings went for nothing as error even if they were wrong.

On the point of sending the old horse home and driving the new one, Isaacson was asked:

"*Q.* Now, I am asking you why you used the new horse on the wagon?

"Mr. Cooper—Objected to as immaterial. It calls for a conclusion. (Objection overruled; exception. The question was not answered.)

"*Q.* Why didn't you send the boy home on the new horse and keep the wagon attached to the old horse? *A.* Because it being a new horse, I wanted to drive myself."

As to this, it may be said, first, that the question objected to was not answered; secondly, that assuming it was answered, the objection was not such as to bar it, because the question called for facts, *i. e.,* the thought in Isaacson's mind at the time as influenced by the circumstances; thirdly, that the answer in any case was not harmful, but rather the reverse; the horse being a new one, Isaacson preferred not to trust him to the boy; fourth, that it was perfectly legitimate cross-examination.

We find no error, and the judgment is, therefore, affirmed.